# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**DARRELL WAYNE MOSS**,

    Plaintiff,

v.                                                                                  Civil Action No. 2:11-CV-44
                                                                                (BAILEY)

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security**,

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge James E. Seibert [Doc. 21] and the defendant's Objections thereto [Doc. 22]. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, failure to file objections permits the district court to review the R&R under the standards that the district court believes are appropriate, and under these circumstances, the parties' right to *de novo* review is waived. See ***Webb v. Califano,*** 468 F.Supp. 825 (E.D. Cal. 1979). Accordingly, this Court will conduct a *de novo* review only as to those portions of the R&R to which the plaintiff objected. The remaining portions of the R&R will be reviewed for clear error. As a result, it is the opinion of this Court that the R&R should be **ADOPTED**.

## I. Background

The plaintiff alleges that he became disabled on September 18, 2005, or September 19, 2005, "when he fell approximately ten feet through an opening in a floor where a stairway had yet to be installed" [Doc. 12 at 1]. The plaintiff states that he suffered a "severe comminuted fracture of the left heel as well as injuries to his lumbar and cervical spine," which was later diagnosed to be a herniated disc that pressed on the spinal cord and the C7 nerve [*Id.*]. On May 12, 2008, the plaintiff filed his disability claim [Doc. 2 at 3]. The initial claim application and request for reconsideration were denied [*Id.*].

On March 14, 2009, the plaintiff requested a hearing [Doc. 9-4 at 12-13]. A hearing was held on July 6, 2009, before Administrative Law Judge ("ALJ") M. Dwight Evans [*Id.* at 14-25; Doc. 9-2 at 27]. On January 26, 2010, ALJ Evans rendered an unfavorable ruling [Doc. 9-2 at 13-26]. The ALJ determined that the plaintiff has degenerative disc disease, cervical stenosis, and migraine headaches; however, the ALJ found that the "medical evidence does not establish [that] the severity of the claimant's impairments meet the severity criteria by the Listing Impairments" [*Id.* at 18-19]. Although he found that the plaintiff could no longer perform the construction work that the plaintiff had performed in the past, ALJ Evans determined that the plaintiff "has the residual capacity to perform the full range of light work . . ." [*Id.* at 19-26]. Accordingly, the ALJ ruled that the plaintiff is not disabled [*Id.* at 25-26]. The plaintiff filed a request for review of the ALJ's decision with the Appeals Council on March 29, 2010 [Doc. 9-2 at 10-12]. The Appeals Council denied the request for review on April 7, 2011 [*Id.* at 2-5].

On June 8, 2011, the plaintiff filed a complaint [Doc. 2] seeking judicial review of the January 26, 2010, adverse decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Pursuant to the Local Rules, this case was referred to Magistrate Judge Seibert for a recommended disposition. On October 3, 2011, and December 6, 2011, the plaintiff and the defendant filed their respective motions for summary judgment [Docs. 11 & 16]. In the complaint and motion for summary judgment, the plaintiff states that the ALJ's decision should be reversed because the ALJ committed several legal errors [Doc. 2 at 2-3; Doc. 12 at 1]. In the brief in support of his motion for summary judgment, the defendant responds to each claim and argues that the ALJ's decision is supported by substantial evidence [Doc. 16].

First, the plaintiff asserts that the ALJ's decision was not supported by substantial evidence with regard to the following conclusions: (1) that the plaintiff did not suffer an impairment under the Listings of Impairments, and (2) that there are a significant number of jobs in the national economy that the plaintiff could perform. [Doc. 12 at 1-2 and 9-15]. Second, the plaintiff alleges that the ALJ failed to properly develop the record concerning the plaintiff's "morbid obesity" and general anxiety disorder [*Id.* at 2 and 15].

On December 30, 2011, Magistrate Judge Seibert recommended that the plaintiff's motion for summary judgment be denied and the defendant's motion for summary judgment be granted [Doc. 21 at 2 and 23]. The magistrate judge further recommended that the decision of the Commissioner be affirmed and the case dismissed with prejudice [Id.]. The magistrate judge concluded that the ALJ "properly considered whether [the plaintiff] suffered from an impairment under 1.04A of the Listing of Impairments, properly determined that there are jobs in the national economy that [the plaintiff] can perform, and properly handled [the plaintiff's] claims of obesity and anxiety" [Doc. 21 at 23]. On January 13, 2012, the plaintiff filed timely objections [Doc. 22] to these conclusions in the magistrate

3

judge's report and recommendation. The defendant filed no response thereto [See Docket Sheet for 2:11-CV-44].

## II. Applicable Standards

### A. Judicial Review of an ALJ Decision

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. *See* 42. U.S.C. § 405(g). "The findings . . . as to any fact, if supported by substantial evidence, shall be conclusive." **Richardson v. Perales**, 402 U.S. 389, 390 (1971); **Coffman v. Bowen**, 829 F.2d 514, 517 (4th Cir. 1987). The phrase "'supported by substantial evidence'" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See* **Perales**, 402 U.S. at 401 (*citing* **Consol. Edison Co. v. NLRB**, 305 U.S. 197, 229 (1938)). Substantial evidence "consists of more than a mere scintilla of evidence[,] but may be somewhat less than a preponderance . . . ." **Laws v. Celebrezze**, 368 F.2d 640, 642 (4th Cir. 1966). Thus, "[i]t is not within the province of a reviewing court to determine the weight of the evidence; nor is it [the court's] function to substitute [its] judgment . . . if [the] decision is supported by substantial evidence." *Id.* (*citing* **Snyder v. Ribicoff**, 307 F.2d 518, 520 (4th Cir. 1962)). Ultimately, it is the duty of the ALJ reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. **King v. Califano**, 599 F.2d 597, 599 (4th Cir. 1979). "This Court does not find facts or try the case *de novo* when reviewing disability determinations." *Id.*; *see also* **Seacrist v. Weinberger**, 538 F.2d 1054, 1056-57 (4th Cir. 1976); **Hays v. Sullivan**, 907 F.2d 1453, 1456 (4th Cir. 1990).

### B. Five-Step Evaluation Process

To determine whether a claimant is disabled, the ALJ considers the following five-step evaluation process:

Step One: Determine whether the claimant is engaging in substantial gainful activity;

Step Two: Determine whether the claimant has a severe impairment;

Step Three: Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;

Step Four: Consider the RFC assessment to determine whether the claimant can perform past relevant work; and

Step Five: Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

*See* 20 C.F.R. § 404.1520(a)(4) (2011).

Once the claimant satisfies Steps One and Two, he/she will automatically be found disabled if he/she suffers from a listed impairment and meets the duration requirement. ***Rhoderick v. Heckler***, 737 F.2d 714, 715 (7th Cir. 1984); 20 C.F.R. § 404.1509. If the claimant does not have listed impairments but cannot perform his/her past work, the burden shifts to the Commissioner to show that the claimant can perform some other job. ***Rhoderick***, 737 F.2d at 715.

### III. Discussion

At Step One, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since September 18, 2005 [Doc. 9-2 at 18]. At Step Two, the ALJ held that the plaintiff had the following severe impairments: degenerative disc disease, cervical

5

stenosis, and migraine headaches [*Id.* at 18-19]. At Step Three, the ALJ found that the plaintiff did not meet a listing impairment and had the RFC to perform the full range of light work as defined in 20 C.F.R. 404.1567(b) [*Id.* at 19-25]. At Step Four, the ALJ determined that the plaintiff was unable to perform past relevant work [*Id.* at 25]. At Step Five, the ALJ ruled that the "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform . . ." [*Id.* at 25-26].

In his R&R, the magistrate judge recommends that this Court affirm the ALJ's decision. On January 13, 2012, the plaintiff filed timely objections [Doc. 22], taking issue with the analysis of the magistrate judge. The Court will address these objections as they relate to each of the plaintiff's claims of error discussed above. In so doing, the Court will determine, *de novo*, whether any claim of error necessitates a finding that the ALJ's decision is not supported by substantial evidence.

### A. Step Three: Listing of Impairments

The ALJ is required to issue a written decision that gives findings of fact and the reasons for the decision. 20 C.F.R. § 404.953(a). At Step Three of the five-step evaluation process the ALJ found that the plaintiff does not meet any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [Doc. 9-2 at 19]. The ALJ stated that "[t]he medical evidence of record does not establish [that] the severity of the claimant's impairments meet the severity criteria required by the Listing of Impairments. In addition, no expert designated by the Commissioner has offered an opinion that the claimant's impairments equal any section of the listed impairments" [*Id.*].

In the plaintiff's motion for summary judgment, he argues that the ALJ erred by "fail[ing] to explicitly consider whether [the plaintiff] suffered from an impairment that met

6

or equalled Section 1.04 of the Listing of Impairments" at Step Three of the five-step evaluation process [Doc. 12 at 9-11].[1]  The defendant argues that the plaintiff failed to meet his burden of proof that he met a listing, which the plaintiff bears at the third step of the evaluation process [Doc. 17 at 13, citing **Hunter v. Sullivan**, 993 F.2d 31, 35 (4th Cir. 1992)].  In the R&R, the magistrate judge concluded that "there was substantial evidence for the ALJ to find that [the plaintiff] did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A" [Doc. 21 at 18].  The plaintiff objects to this conclusion stating that the magistrate judge made findings of fact to determine whether the plaintiff suffered from a listed impairment [Doc. 22 at 1, 9-11].

Pursuant to Listing 1.04A, degenerative disc disease, resulting in compromise of a nerve root or the spinal cord is considered a listed impairment for purposes of step three if it is accompanied with the following: (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness), and (4) if there is involvement of the lower back, positive straight leg raising test (sitting and supine).  20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.04A.  The plaintiff must meet all of the specified medical criteria to fall under this listed impairment.  **Sullivan v. Zebley**, 493 U.S. 521, 530 (1990).

The plaintiff argues that the ALJ failed to make proper findings of fact in determining

---

[1]An impairment is "medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

that the plaintiff did not meet any of the listed impairments [Doc. 22 at 10, relying on *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)]. In *Cook*, the ALJ found the claimant's arthritis was a severe impairment, but the claimant did not meet or equal any impairment; however,"there [was] ample evidence in the record to support a determination that the claimant's arthritis met or equalled one of the arthritic impairments listed in Appendix 1, Section 1.01." 783 F.2d at 1172. Accordingly, the Fourth Circuit Court of Appeals ("Fourth Circuit") stated that the ALJ's reasoning was deficient because it failed to identify which of the four possible Section 1.01 subsidiary listed impairments were considered to be relevant and failed to identify the standard to be applied. *Id.* at 1173.

In this case, the plaintiff argues that Listing 1.04A is relevant to this case; he does not argue that there are multiple listed impairments at issue in this case as there were in *Cook* [*See* Docs. 12 and 22]. Although the ALJ did not clearly list each relevant listing and then compare plaintiff's symptoms to each one, the ALJ did clearly note his consideration of plaintiff's symptoms relevant to Listing 1.04A at Step Three [*See* Doc. 9-2 at 19-25; *see also* *Ogden v. Astrue*, 597 F. Supp.2d 626, 640-41 (N.D.W.Va. 2009). As such, even though it might not have been done in the most clear manner, the ALJ did address Listing 1.04A and compare plaintiff's symptoms to the requirements of that listing. *See* *Ogden*, 597 at 640-41. Accordingly, to the extent that the plaintiff argues that the magistrate judge improperly made findings of fact to reach his conclusion in the R&R, this Court disagrees; the magistrate judge merely elucidated the medical evidence considered by the ALJ.

Furthermore, the medical evidence in this case does not provide "ample evidence" that Listing 1.04A has been met. *See* *Cook*, 783 F.2d at 1172. More importantly,

8

substantial evidence supports the ALJ's determination that the plaintiff did not meet Listing 1.04A.  The plaintiff argues that a September 11, 2008, notation by Dr. Richard Hynes that the plaintiff had "some mild give-way due to pain that he is experiencing in both tibialis anterior bilaterally as well as the biceps" supports a finding that the muscle weakness requirement of Listing 1.04A has been established [*See* Doc. 12 at 10, referring to Doc. 9-10 at 34].  However, on examination, plaintiff's muscle strength in his upper and lower extremities was frequently determined to be full or normal [Doc. 9-7 at 65; Doc. 9-10 at 2, 5, 8, 59, and 107].  Accordingly, there is substantial evidence in the record to support the conclusion that the plaintiff did not meet the third requirement of Listing 1.04A.[2]  As such, because Listing 1.04A is the only relevant listed impairment, substantial evidence supports the ALJ's conclusion that the plaintiff does not meet a listed impairment.

Although the plaintiff argues that his ability to ambulate effectively is not relevant to Listing 1.04A, it provides additional support for the ALJ's determination that the plaintiff does not meet Listing 1.04A.  ***Owens v. Astrue***, 2011 WL 5869809, *5 (D.S.C. Nov. 21, 2011) (citing ***Reid v. Comm'r of Soc. Sec.***, 2011 WL 877691, *8 at n.4 (E.D.Mich. Mar. 30, 2009) (Although "[a]n inability to 'ambulate effectively' is part of Listing 1.04C, [it] is also applicable to an examination of 1.04A given that both a loss of strength and feeling can inhibit walking . . ..")).  The plaintiff testified that he is able to walk around the house without the use of a cane; he stated that he might use his cane a few times a week if he is walking around in the yard [Doc. 9-2 at 53].  He also stated that he can use a back brace/belt to

---

[2]The parties also dispute whether the evidence demonstrates the "nerve root compression" requirement; however, this Court does not need to address this issue because substantial evidence supports the conclusion that the muscle weakness requirement has not been established.

9

minimize pain while he is walking [*Id.* at 54]. The plaintiff also testified that, since his injury, he has been able to mow lawns [*Id.* at 41]. As such the record demonstrates that the plaintiff is able to ambulate effectively, providing additional support for the ALJ's determination that the plaintiff did not meet any of the listed impairments, including Listing 1.04A.

Accordingly, this Court hereby **OVERRULES** the plaintiff's objections on this issue. For these reasons and those more fully stated in the magistrate judge's R&R, this Court finds that substantial evidence supports the ALJ's conclusion that "[the plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)" [See Doc. 9-2 at 19].

### B. Step Three: Plaintiff's Obesity and General Anxiety Disorder

The plaintiff argues that the ALJ failed to properly consider the plaintiff's obesity and general anxiety disorder at Step Three of the five-step evaluation.

### 1. Obesity

At Step Two of the five-step evaluation, obesity[3] may be considered alone or in

---

[3]Pursuant to 20 C.F.R., pt. 404, Subpt. P. App. 1, 1.00Q,
Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

combination with another medically determinable impairment. Social Security Ruling 02-1p. However, "[e]ven where an ALJ's decision does not explicitly analyze obesity, the omission may be harmless if the ALJ relied on the opinions of doctors who were aware of the obesity." *Cook v. Astrue*, 800 F.Supp.2d 897, 907 (N.D.Ill. 2011) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006). Furthermore, when appealing an ALJ's decision, the plaintiff must specify how the obesity (1) limits his or her functioning and (2) exacerbates his or her impairments. *Id.* at 907-08.

In this case, the ALJ relied on medical evidence that incorporated the effects of the plaintiff's obesity; the opinion evidence on which the ALJ relied came from doctors who had either taken into account plaintiff's obesity, did not note it to be a concern, or did not consider the plaintiff to be obese [*See* Doc. 9-7 at 10 and 65, referring to the plaintiff as obese and morbidly obese, respectively; *see also* Doc. 9-10 at 7 and 51, referring to the plaintiff as a "well-developed"; *see also* Doc. 9-10 at 3 and 19, noting plaintiff's height and weight]. The ALJ reviewed the plaintiff's symptoms and daily activities, "which by their nature reflect the combined impact of all [of plaintiff's] impairments, including obesity." *Cook*, 800 F.Supp.2d at 908. In addition, the plaintiff does not explain how his alleged obesity limits his functioning or exacerbates his impairments [*See* Docs. 12, 19, and 22]. *Cook*, 800 F.Supp.2d at 907-08. Furthermore, the medical evidence from plaintiff's treating physicians who referred to plaintiff as obese, does not document any preclusive work limitations attributable to the plaintiff's obesity [*See* Doc. 9-7 at 10 and 65].

As such, even if this Court were to find that the ALJ did not properly consider the plaintiff's obesity, such error would be a harmless one because the ALJ "relied on the

opinions of doctors who were aware of the obesity." *Cook*, 800 F.Supp.2d at 907. Accordingly, this Court **OVERRULES** the plaintiff's objection on this issue.

## 2. General Anxiety Disorder

The plaintiff states that the ALJ failed to properly consider his general anxiety disorder; however, aside from this brief statement in a heading, the plaintiff does not elaborate upon this argument [*See* Doc. 12 at 15]. In his ruling, the ALJ determined that the plaintiff's "medically determinable mental impairment of anxiety does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe" [Doc. 92- at 18]. In reaching this conclusion, the ALJ considered each of the four broad functional areas set out in the disability regulations in Section 12.00C of the Listing of Impairments: (1) daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation [*Id.* at 19].[4] For this reason and those more fully stated in the magistrate judge's R&R, this Court determines that the ALJ properly considered the plaintiff's general anxiety; accordingly, this Court hereby **OVERRULES** the plaintiff's objection on this issue.

---

[4]When assessing the plaintiff's general anxiety disorder in October 2008, Dr. Theodore Weber noted that plaintiff had only a mild degree of limitation with regard to the following: (1) restrictions of activities of daily living; (2) difficulties in maintaining social functioning; and (3) difficulties in maintaining concentration, persistence, or pace [Doc. 9-10 at 55]. Dr. Weber found no episodes of decompensation [*Id.*]. In January 2009, Dr. Weber again noted that the plaintiff had a mild degree of limitation with regard to restrictions of activities of daily living [*Id.* at 78]. However, he found that the plaintiff had (1) no difficulties in maintaining social functioning, (2) no difficulties in maintaining concentration, persistence, or pace, and (3) no episodes of decompensation [*Id.*]. Dr. Bruce Hertz also noted that this anxiety was not severe [*Id.* at 90]. In addition, Dr. Hertz noted that the plaintiff had (1) a mild degree of restriction of activities of daily living, (2) no difficulties in maintaining social functioning, (3) no difficulties in maintaining concentration, persistence, or pace, and (4) no episodes of decompensation [*Id.* at 100].

## C. Step Three: Light Work

At the second part of step three, the ALJ determined that the plaintiff "has the [RFC] to perform the full range of light work as defined in 20 CFR 404.1567(b)" [Doc. 9-2 at 19].[5] The regulations define a claimant's RFC as "the most [a claimant] can still do despite [his or her] limitations." See 20 C.F.R. § 1545(a)(1). In assessing a claimant's RFC, an ALJ will consider "all of the relevant medical and other evidence," such as "any statements about what [the claimant] can still do that have been provided by medical sources . . . ." § 404.1545(a)(3). This includes statements about the claimant's ability to "perform certain physical demands of work activity, such as sitting, standing, [and] walking . . . .." § 404.1545(b).

In his objections, the plaintiff argues that "the Magistrate Judge did not consider [his] argument that the ALJ ignored evidence from [the plaintiff's] treating physician which showed that he could not perform a full range of light work" [Doc. 22 at 1; *see also* Doc. 12 at 14, citing Social Security Ruling 96-8p]. However, by doing so, the plaintiff is arguing for a different standard than the one by which this Court must complete its review of the ALJ's ruling. If the ALJ's decision is supported by substantial evidence, then it will be upheld,

---

[5]20 C.F.R. § 404.1567 provides the following definition for light work:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

even if there is some evidence in the record that would support a different conclusion than the one reached by the ALJ. ***Perales***, 402 U.S. at 390; ***Coffman***, 829 F.2d at 517. As such, this Court must determine whether the ALJ's ruling is supported by substantial evidence. This Court finds that it is supported by substantial evidence.

The ALJ cites to extensive evidence to support his conclusion regarding the plaintiff's ability to perform a full range of light work. Although the plaintiff can point to medical evidence from a June 23, 2009, evaluation that might support a different conclusion,[6] the ALJ's conclusion is supported by substantial evidence and, therefore, must be affirmed. On January 27, 2009, Dr. Sunita Patel noted that the plaintiff can occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds [Doc. 9-10 at 83]. Dr. Patel also noted that the plaintiff could stand about six hours in a working day and sit about six hours in a working day [*Id.*]. Dr. Patel further noted that the plaintiff could occasionally stoop or crouch [*Id.* at 84]. Dr. Robin Burgess reached similar conclusions in an October 2008 assessment [*Id.* at 37-44].[7] In addition, the ALJ relied upon testimony by

---

[6]In September 2008, Dr. Richard Hynes met with the plaintiff and noted that the plaintiff was given a weight limit of 10 to 13 pounds and a maximum of 2 to 3 hour per day standing and sitting overall [Doc. 9-10 at 34]. In June 2009, Dr. Hynes stated that the plaintiff "cannot stand, sit, or walk for lengthy periods of time" [*Id.* at 105]. He reiterated the weight and standing/sitting restrictions from the September 2008 visit. Dr. Hynes also noted that it is difficult for the plaintiff to stand on his toes and his heels for a significant amount of time [*Id.*]. He further stated that the plaintiff informed him that it was "very difficult for him to even work in a sedentary capacity" [*Id.* at 106]. However, as noted by Dr. Hynes, his assessment regarding the plaintiff's ability to perform sedentary work is based upon the plaintiff's statements.

[7]On October 2, 2008, Dr. Robin Burgess determined that the plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds [Doc. 9-10 at 38]. Dr. Burgess also noted that the plaintiff could stand/walk 6 hours in a work day and sit 6 hours in a work day [*Id.*]. Dr. Burgess also stated that there were no limits on the plaintiff's ability to push or pull (other than those restrictions regarding the weight restrictions previously noted) [*Id.*]. In

14

the plaintiff regarding his daily activities, including the ability to mow lawns [*See* Doc. 9-2 at 22-23].

To the extent that the evidence cited by plaintiff conflicts with the evidence from Dr. Patel's and Dr. Burgess's physical RFC assessments, the ALJ stated in his ruling that the "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the . . . residual functional capacity assessment" [Doc. 9-2 at 24]. Accordingly, this Court finds that the ALJ properly considered the weight of the evidence and the ALJ's decision is support by substantial evidence; as such, this Court hereby **OVERRULES** the plaintiff's objection on this issue.

### D. Step Five: Jobs in the National Economy

At Step Five, the ALJ ruled that "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform" [Doc. 9-2 at 25]. The plaintiff claims that this ruling is not supported by substantial evidence [Doc. 12 at 1]. In his objections, the plaintiff states that it was error for the magistrate judge to conclude that the ALJ's reliance on the Medical-Vocational Guidelines to support this ruling was proper and that vocational expert testimony was not required [Doc. 22 at 1]. The plaintiff further objects to the magistrate judge's R&R on the basis that the magistrate judge failed to consider the plaintiff's contention that the ALJ did not properly determine the plaintiff's nonexertional limitations [*Id.* at 1-2, relying on **Hammond v. Heckler**, 765 F.2d 424, 426 (4th Cir. 1985)].

In making his ruling, the ALJ did not rely upon testimony by a vocational expert,

---

addition, Dr. Burgess noted that the plaintiff had occasional postural limitations in the following categories: climbing, stooping, kneeling, crouching, and crawling [*Id.* at 39].

15

instead utilizing the Medical Vocational Guidelines contained in 20 C.F.R. Pt. 404, Subpt. P, App.2 [Doc.9-2 at 24].[8]  An ALJ may rely on vocational expert testimony "to assist the ALJ in determining whether there is work available in the national economy [that the plaintiff] can perform."  **Walker v. Bowen**, 889 F.2d 47, 50 (4th Cir. 1989); *see also* 20 C.F.R. §§ 404.1566(e), 416.966(e).  However, except for certain limited circumstances, such vocational expert testimony is generally discretionary.  **Hall v. Harris**, 658 F.2d 260, 267 (4th Cir. 1981); *see also* **Hoopai v. Astrue**, 499 F.3d 1071 (9th Cir. 2007).[9]

At Step Two of the five-step evaluation process, the ALJ determined that the plaintiff suffered from the following severe impairments: (1) degenerative disc disease, (2) cervical stenosis, and (3) migraine headaches [Doc. 9-2 at 18].  The ALJ further stated that "[t]hese impairments impose more than minimal limitations on the claimant's ability to function" [*Id*.].  The plaintiff states that the nonexertional impairment of migraine headaches necessitates the use of vocational expert testimony [Doc. 22 at 5, relying upon **Johnson v. Sec'y of Health and Human Servs.**, 872 F.2d 810, 814 (8th Cir. 1989); and **Nesselrotte v.**

---

[8]The ALJ applied GRID Rule 202.00(a) [Doc. 9-2 at 25-26].  This rule states the following:
> The functional capacity to perform a full range of light work includes the functional capacity to perform sedentary as well as light work.  Approximately 1,600 separate sedentary and light unskilled occupations can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy.  These jobs can be performed after a short demonstrations or within 30 days, and do not require special skills or experience.

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(a).

[9]**Hoopai** states that "a vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid."  499 F.3d at 1076.

***Sullivan***, 939 F.2d 596, 598 (8th Cir. 1991)[10]].

However, in ***Johnson***, the claimant experienced severe daily headaches, which caused the plaintiff to lie down in a darkened room up to two hours each day; furthermore, the medical evidence and testimony of the claimant's wife demonstrated that the claimant could not do anything else while experiencing the headaches and experienced concentration and memory issues when taking the medication for his headaches. 872 F.2d at 813-14. As such, the Fourth Circuit's ruling in ***Johnson*** was based upon evidence demonstrating a nonexertional impairment that significantly impacted the claimant's ability to perform work. However, the plaintiff in this case has not demonstrated that his migraine headaches rise to the same level as ***Johnson***.[11]

In addition, other circuits have specifically ruled that vocational expert testimony is not required in every case involving a nonexertional impairment; the nonexertional impairment must severely impact the claimant's ability to work. See ***Warmoth v. Bowen***, 798 F.2d 1109, 1112 (7th Cir. 1986) (stating that there only need be "reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not

---

[10]This Court notes that the claimant in ***Nesselrotte*** also had marked visual impairment, did have full use of his left arm, and had limited movement of his neck. As such, ***Nesselrotte*** does not stand for the proposition that headaches alone are a sufficient basis for requiring vocational expert testimony.

[11]In October 2007, the plaintiff reported experiencing daily headaches [Doc. 9-7 at 42]. However, the plaintiff also reported that the headaches were "aborted" with the use of medication [*Id.*]. Moreover, the plaintiff later testified that he experienced a headache at least once a week, sometimes four times a week [Doc. 92- at 45]; this is significantly less frequent than at least once a day. In addition, the plaintiff's general statement that he "sometimes stays in bed for relief" from his headaches does not rise the level of a claimant needing to lie down in a dark room every day, sometimes as long as two hours at a time [*See* Doc. 9-6 at 32].

significantly diminish employment opportunities otherwise available"); ***Cole v. Sec'y of Health & Human Servs.***, 820 F.2d 768, 771 (6th Cir. 1987) (stating that use of the medical vocational grids is sufficient, "unless the claimant suffers from nonexertional limitations that significantly limit the range of work permitted by his exertional limitations"); ***Hargis v. Sullivan***, 945 F.2d 1482, 1491 (10th Cir. 1991); ***Wheeler v. Sullivan***, 888 F.2d 1233, 1238 (8th Cir. 1989).

The plaintiff argues that his migraine headaches should be considered severe at Step Five of the evaluation process because it was listed as one of three severe impairments at Step Two of the evaluation process [Doc. 22 at 6-7, relying upon ***Wooldridge v. Bowen***, 816 F.2d 157 (4th Cir. 1987)[12]]. However, the "severity of the limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two, otherwise the two steps would collapse and a vocational expert would be required in every case in which a step-two determination of severity is made." ***Hoopai***, 499 F.3d at 1076. Even though the plaintiff's headaches might impose difficulties upon his ability to perform the labor-intensive work that he used to do prior to his injury, these headaches do not necessarily impact his ability to do light

---

[12]This Court notes that this case does not state that a Step Two determination is sufficient to require vocational testimony at Step Five. In ***Wooldridge***, the Fourth Circuit stated that "the 'grids' may not be automatically applied to deny disability" where the claimant had "environmental restrictions which prevent[ed] her from being exposed to fumes, dust, humidity, and temperature extremes." 816 F.2d at 161. The plaintiff in this case does not have any such environmental restrictions. Furthermore, the Fourth Circuit has stated that this ruling does not impact "'proper reference to the medical vocational guidelines' [as] an acceptable means of showing that a claimant can perform alternative work." ***Murray v. Shalala***, 51 F.3d 267, *5 (4th Cir. 1995)(quoting ***Coffman v. Bowen***, 829 F.2d 514, 518 (4th Cir. 1987)).

work.[13]  In addition, the ALJ determined that the three impairments found at Step Two imposed more than minimal limitations on the plaintiff; however, the cumulative effect of the three impairments described at the Step Two level does not require an ALJ to determine that one of those impairments alone meets the severity requirement for Step Five.

Furthermore, substantial evidence supports the ALJ's decision to apply Grid Rule 202.00(a) without vocational expert testimony.  There were numerous occasions on which the plaintiff did not complain of headaches or denied having one [Doc. 9-7 at 9; Doc. 9-10 at 2-3, 5, 12, 19, 26, 34, and 65].  In addition, the plaintiff provided testimony regarding his ability to mow lawns and conduct some housework [*See* Doc. 9-2].  This substantial evidence supports the ALJ's determination that the plaintiff's headaches did not impose a severe burden on the plaintiff's ability to perform light work.  Accordingly, because the ALJ was not required to rely upon vocational expert testimony and the ALJ's determination regarding the number of jobs in the area is supported by substantial evidence, this Court hereby **OVERRULES** the plaintiff's objection regarding this issue.

## IV.  Conclusion

Upon careful consideration, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Doc. 21]** should be, and hereby is, **ADOPTED**.  Further, the plaintiff's Objections **[Doc. 22]** are **OVERRULED**.  Therefore, this Court **ORDERS** that the defendant's Motion for Summary Judgment **[Doc. 16]** is hereby **GRANTED** and the plaintiff's Motion for Summary Judgment **[Doc. 11]** is hereby **DENIED**.  Accordingly, this Court hereby **DENIES** and **DISMISSES** the plaintiff's Complaint **[Doc. 2]** and **ORDERS** that

---

[13]This is supported by the plaintiff's own testimony regarding his ability to conduct some housework and mow lawns.

this matter be **STRICKEN** from the active docket of this Court.  The Clerk is directed to enter a separate judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: April 25, 2012.

_____
JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE